UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

Caption in Compliance with D.N.J. LBR 9004-1

JERROLD S. KULBACK
ARCHER & GREINER
A Professional Corporation
One Centennial Square
Haddonfield, NJ  08033-0968
Tel: (856) 795-2121
Fax: (856) 795-0574
Email:  jkulback@archerlaw.com
Attorneys for Fulton Bank of New Jersey

In Re:

WILLIAM FOCAZIO, MD, P.A. and
ENDO SURGICAL CENTER OF NORTH
JERSEY, P.C.

Debtors.

Chapter 11

Case No. 18-10752 (VFP)
(Jointly Administered)

## OBJECTION OF FULTON BANK OF NEW JERSEY
## TO DEBTORS' DISCLOSURE STATEMENT FILED DECEMBER 11, 2018

Fulton Bank of New Jersey ("FBNJ"), by and through its counsel, Archer & Greiner, a Professional Corporation, files the following objection to the Disclosure Statement [D.I. 205] filed on December 11, 2018 ("Disclosure Statement") filed by William Focazio, MD, P.A. and Endo Surgical Center Of North Jersey, P.C. (collectively, the "Debtors").

### BACKGROUND

1.     FBNJ is a general unsecured creditor of Endo Surgical Center Of North Jersey, P.C. ("Endo").  On April 11, 2018, FBNJ filed a Proof of Claim [Claim No. 19-1] in the Endo bankruptcy case.  The Proof of Claim is in the sum of $1,651,272.43 and relates to two (2) final Judgments By Default ("Judgments") that were entered pre-petition by the Superior Court of New Jersey in favor of FBNJ and against Endo (and others including Dr. William Focazio,

individually). The Judgments arise from the breach of two leases relating to medical equipment. The Superior Court of New Jersey also entered two Orders for Replevin, commanding Endo and the other defendants return the leased equipment to FBNJ. Copies of the Judgments and Orders of Replevin are attached to the Proof of Claim and incorporated herein by reference.

2. Since filing the Proof of Claim, FBNJ has received $425,000 from the sale of leased equipment located at the facility owned by the Debtors' affiliate Riverwood Surgical Center, LLC ("Riverwood"). FBNJ has also received $1,699.48 from a bank levy of Dr. Focazio's personal bank account, and $18,056.33 from a Charging Lien Order entered against Dr. Focazio's interests in Coal House of Monmouth LLC. FBNJ is still owed well in excess of $1 million. The location and status of the equipment that was leased by FBNJ to Endo is unknown to FBNJ.

3. On December 11, 2018, the Debtors filed the Disclosure Statement [D.I. 205] and Plan [D.I. 206]. The Disclosure Statement and Plan provide that general unsecured creditors will receive a distribution of 10% payable quarterly over seven (7) years from the Debtors' operations and sale of assets. The Disclosure Statement and Plan also provide that "Dr. Focazio will be retaining his equity interest." For the reasons that follow, FBNJ objects to the Disclosure Statement.

## LEGAL ARGUMENT

4. Section 1125 of the Bankruptcy Code requires that, before a plan proponent may solicit acceptance or rejection of a plan, the plan proponent must transmit to the parties to be solicited a disclosure statement, containing "adequate information." The Bankruptcy Code defines "adequate information" as:

> Information of a kind, and in sufficient detail, as far as is
> reasonably practicable in light of the nature and history of

> the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor or the relevant class to make an informed judgment about the plan. . . and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information ; . . .

11 U.S.C. § 1125(a)(1).

5. The disclosure statement requirement of section 1125 of the Bankruptcy Code is "crucial to the effective functioning of the federal bankruptcy system[;] . . . the importance of full and honest disclosure cannot be overstated." Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 362 (3d Cir. 1996) (citing Oneida Motor Freight, Inc. v. United Jersey Bank (In re Oneida Motor Freight, Inc.), 848 F.2d 414 (3d Cir. 1988)). The "adequate information" requirement is designed to help creditors in their negotiations with Debtors over the plan. See Century Glove, Inc. v. First Am. Bank, 860 F.2d 94 (3d Cir. 1988). Section 1129(a)(2) conditions confirmation upon compliance with applicable Code provisions. The disclosure requirement of section 1125 is one of those provisions. See 11 U.S.C. 1129(a)(2); In re PWS Holding Corp., 228 F.3d 224, 248 (3d Cir. 2000)..

6. Here, the Disclosure Statement is silent as to the location and status of the equipment that was leased by FBNJ to Endo. While FBNJ suspects that there may have been fraud by Dr. Focazio and/or others in connection with the lease, such that some or all of the leased equipment never actually existed, the Debtors' position with respect to the leased equipment should be disclosed.

7.	Furthermore, even if the Disclosure Statement was both clear and informative with respect to the leased equipment, it should not be approved because the Plan is patently unconfirmable. *See*, In re American Capital Equipment LLC, 688 F.3d 145 (3rd Cir. 2012) (bankruptcy court can determine at the disclosure statement stage that a Chapter 11 plan is unconfirmable without first holding a confirmation hearing). The Third Circuit followed numerous courts in this jurisdiction and elsewhere that determined to resolve confirmation issues at the disclosure statement stage before proceeding with solicitation on the grounds that the court's equitable powers under 11 U.S.C. § 105 "surely enable it to control its own docket" and thus, a "[c]ourt [should] not proceed with the time consuming and expensive proposition of hearings on a disclosure statement and plan when the plan may not be confirmable because it does not comply with [confirmation requirements]." Id.

8.	A plan is patently unconfirmable where (1) confirmation "defects [cannot] be overcome by creditor voting results" and (2) those defects "concern matters upon which all material facts are not in dispute or have been fully developed at the disclosure statement hearing." Id. at 155.

9.	Here, the Plan is patently unconfirmable because it violates the Absolute Priority Rule.  The "fair and equitable" requirement is clearly spelled out in section 1129(b)(2) of the Bankruptcy Code, which states that a plan is "fair and equitable" with respect to a class of unsecured claims if "the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property." 11 U.S.C. § 1129(b)(2)(B).  This is also known as the "absolute priority rule."

10.	The Plan is not "fair and equitable" within the meaning of section 1129(b) and thus violates the absolute priority rule.  Specifically, the Plan proposes that "Dr. Focazio will be

4

retaining his equity interests," while the unsecured creditors do not get paid in full. It is impermissible for equity of the Debtors to retain value where the unsecured creditors are not being paid in full. Accordingly, the Disclosure Statement describes a patently unconfirmable Plan, and approval should be denied.

## RESERVATION OF RIGHTS

11. FBNJ reserves its right to object to any proposed modifications to the Disclosure Statement, and expressly reserves any and all objections it may have to confirmation of the Plan. FBNJ reserves its right to supplement this Objection, including at the hearing on approval of the Disclosure Statement.

ARCHER & GREINER
A Professional Corporation
Attorneys for Fulton Bank of New Jersey


By     /s/ Jerrold S. Kulback
      Jerrold S. Kulback

Dated: January 7, 2019

215773067v1