| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
| JAY SAMUELS, ESQ.<br>WINDELS MARX LANE & MITTENDORF, LLP<br>120 Albany Street Plaza, 6th Floor<br>New Brunswick, New Jersey 08901<br>(732) 448-2533<br>732-846-8877 fax<br>Email: jsamuels@windelsmarx.com<br>Attorneys for First Commerce Bank | |
| In Re:<br>WILLIAM J. FOCAZIO, MD, PA and ENDO SURGICAL CENTER OF NORTH JERSEY, P.C.<br><br>Debtors, | Chapter 11<br><br>Case No. 18-10752 (VFP)<br>18-10753 (VFP)<br>(Jointly Administered)<br>Hearing Date January 24, 2019 at 11:00 a.m. |

**OBJECTION OF FIRST COMMERCE BANK OF TO DEBTORS' DISCLOSURE STATEMENT FILED DECEMBER 11, 2018**

First Commerce Bank ("FCB"), by and through its counsel, Windels Marx Lane & Mittendorf, LLP, files the following objection to the Disclosure Statement [D.I. 205] filed on December 11, 2018 ("Disclosure Statement") filed by William Focazio, MD, P.A. and Endo Surgical Center Of North Jersey, P.C. (collectively, the "Debtors").

The hearing on the approval of the Disclosure Statement is currently scheduled for January 24, 2019 at 11:00 a.m.

## BACKGROUND

1. FCB is a secured creditor of William J. Focazio, MD, PA ("WJFMD") and Endo Surgical Center of North Jersey, P.C. ("Endo"). As certain aspects of the loans made by FCB, and the

relationship between FCB, the Debtors, and third parties related to the Debtors are not accurately set forth in the Disclosure Statement, FCB sets forth these matters below.

**The Loans and Default**

2. This is a summary description of the bases for FCB's claims against Debtors and is not intended to alter or amend the documents, instruments and agreements described below, to which the Court and parties are respectfully referred for their full terms and conditions.

3. On January 23, 2015 the Debtors executed and delivered to FCB a Commercial Guaranty ("$3.375 Million Guaranty") of a commercial loan for $3.375 Million (the "$3.375 Million Loan") made to DVCO LLC ("DVCO"), a non-debtor third party related to Debtors through common ownership by William J. Focazio ("WJF").

4. The $3.375 Million Loan was secured by a mortgage from DVCO encumbering the real property located at 979-999 Clifton Avenue, Clifton, New Jersey (the "999 Clifton Property") dated January 23, 2015 (the "$3.375 Million 999 Clifton Mortgage"). The Debtors are tenants at the 999 Clifton Property under leases with DVCO.

5. On October 30, 2015 the Debtor Endo executed and delivered a Promissory Note ("$1.2 Million Note") evidencing its indebtedness as borrower to FCB on a commercial loan for $1.2 Million ("$1.2 Million Loan").

6. On October 30, 2015 the Debtor WJFMD executed and delivered to FCB a Commercial Guaranty ("$1.2 Million Guaranty") on the $1.2 Million Loan.

7. The $1.2 Million Loan was secured by a mortgage from DVCO encumbering the 999 Clifton Property, dated October 30, 2015 (the "$1.2 Million 999 Clifton Mortgage").

8. As additional security for the $1.2 Million Loan, Debtors executed and delivered to FCB a Commercial Security Agreement (the "$1.2 Million Security Agreement"), which granted FCB a security interest in:

> All inventory, equipment, accounts (including but not limited to all health-care-insurance receivables), chattel paper, instruments (including but not limited t o all promissory notes), letter of credit rights, letters of credit, documents, deposit accounts, investment property, money, other rights to payment and performance, and general intangibles (including but not limited to all software and all payment intangibles); all oil, gas and other minerals before extraction; all oil, gas, other minerals and accounts constituting as-extracted collateral; all fixtures; all timber to be cut; all attachments, accessions, accessories, fittings, increases, tools, parts, repairs, supplies, and commingled goods relating to the foregoing property, and all additions, replacements of and substitutions for all or any part of the foregoing property; all insurance refunds relating to the foregoing property, all good will relating to the foregoing property; all records and data and embedded software relating to the foregoing property, and all equipment, inventory and software to utilize, create, maintain and process any such records and data on electronic media; and all supporting obligations relating to the foregoing property; all whether now existing or hereafter arising, whether now owned or hereafter acquired or whether now or hereafter subject to any rights in the foregoing property; and all products and proceeds (including but not limited to all insurance payments) of or relating to the foregoing property.

9. On December 30, 2015 the Debtors executed and delivered a Promissory Note ("$2.25 Million Note") evidencing their indebtedness as borrowers to FCB on a commercial loan for $2.25 Million ("$2.25 Million Loan").

10. The $2.25 Million Loan was secured by a mortgage from DVCO encumbering the 999 Clifton Property, dated December 30, 2015 (the "$2.25 Million Clifton Avenue Mortgage").

11. As additional security for the $2.25 Million Loan, Debtors executed and delivered to FCB a Commercial Security Agreement (the "$2.25 Million Security Agreement"), which

granted FCB a security interest collateral the same as in the $1.2 Million Security Agreement above.

12. The Debtors defaulted on their obligations under the $3.375 Million Loan, the $1.2 Million Loan, and the $2.25 Million Loan (collectively the "Loans"), among other things, being past due on payments under the Loans since May 1, 2016.

13. On January 20, 2017 FCB was awarded final judgment against the Debtors in the amount of $7,273,771.45. This judgment was recorded with the State of New Jersey on February 13, 2017 (J-20865-17).

**Debtors' Forbearance Agreement**

14. In or around April 2018, the Debtors, amongst other persons and entities, entered into a Forbearance Agreement with FCB (the "Forbearance Agreement").

15. Pursuant to the Forbearance Agreement, the Debtors confirmed and acknowledged amounts due and owing on the Loans, reaffirmed the Loan Documents and grants of Security Interests.

16. Pursuant to the Forbearance Agreement Debtors, amongst other parties, must pay FCB a monthly payment of $34,286.68. However, under the Forbearance Agreement, Debtors may elect to pay only half that amount ($17,143.34) in cash monthly and let the other half accrue as Payment-in-Kind ("PIK") interest that will then become additional principal debt.

17. Contrary to Debtors statement in page 7 of the Disclosure statement, Debtors have never paid their full monthly payment of $34,286.68, but have always exercised their option to pay only half of the monthly payment amount and let the other half accrue as additional debt.

18. Pursuant to the Forbearance Agreement, on or before March 31, 2019 the Debtors are obligated to refinance the debt secured by the 999 Clifton Property and completely repay to FCB the indebtedness currently due under the Loans.

**Loan to The Medical Building, LLC and TMB Forbearance Agreement**

19. On December 30, 2015, FCB made a commercial mortgage loan to The Medical Building, LLC ("TMB")[1] as "Borrower" in the original principal amount of $1,000,000.00 (the "TMB $1.0 Million Loan").

20. Simultaneously with the execution of the TMB $1.0 Million Note, and as security therefor, TMB, as grantor and through its principal and managing member, Cara Focazio ("C. Focazio"), executed and delivered to FCB a mortgage dated December 30, 2015 (the "Mortgage") relating to the real property commonly known as 975 Clifton Avenue, Clifton, New Jersey (the "975 Clifton Property").

21. In or around April 2018, TMB, C. Focazio, and William J. Focazio ("WJF") entered into a forbearance agreement with FCB with respect to the TMB $1.0 Million Loan. (the "TMB Forbearance Agreement")

22. Pursuant to the TMB Forbearance Agreement, the TMB, C. Focazio and WJF confirmed and acknowledged amounts due and owing on the TMB $1.0 Million Loan, reaffirmed the Loan Documents and grants of Security Interests.

23. Pursuant to the TMB Forbearance Agreement, as of March 30, 2018 the amount acknowledged as owed by TMB and C. Focazio on the TMB $1.0 Million Loan was $1,014,702.32.

---

[1] TMB is a non-debtor entity and does not have common ownership with any of the Debtors.

{40794479:4}    5

24. Pursuant to the TMB Forbearance Agreement, WJF and C. Focazio "agree and represent to FCB that C. Focazio is the 100% owner of all membership interest in TMB and shall not transfer any interest in TMB as long as any sums are owed to FCB under this Agreement or the Loan Documents."

25. Pursuant to the TMB Forbearance Agreement TMB and C. Focasio must pay FCB a monthly payment of $4,227.93.

26. Pursuant to the TMB Forbearance Agreement, on or before December 31, 2018 TMB and C. Focazio were obligated "pay Lender[FCB] an amount sufficient to fully satisfy the remaining outstanding [TMB] Indebtedness due under the [TMB] Loan Documents, less all payments against the [TMB] Indebtedness paid by Obligors to Lender (the "Payoff Amount")".

27. TMB and C. Focazio have failed to pay all of the TMB Indebtedness by the TMB Forbearance Maturity Date of December 31, 2018 and are now in default of the TMB Forbearance Agreement. To the best of FCB's knowledge, there is pending no sale or refinancing of the 975 Clifton Property or the TBM Indebtedness.

28. TMB and C. Focazio's default of the TMB Forbearance Agreement permits FCB to proceed to Final Judgment of Foreclosure on the 975 Clifton Property and then to sell the property at foreclosure sale.

## LEGAL ARGUMENT

29. Section 1125 of the Bankruptcy Code requires that, before a plan proponent may solicit acceptance or rejection of a plan, the plan proponent must transmit to the parties to be solicited a

Case 18-10752-VFP    Doc 215    Filed 01/10/19    Entered 01/10/19 16:15:37    Desc Main
Document    Page 7 of 10

disclosure statement, containing "adequate information." The Bankruptcy Code defines "adequate information" as:

> Information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor or the relevant class to make an informed judgment about the plan. . . and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information ; . . .  11 U.S.C. § 1125(a)(1).

30. The disclosure statement requirement of section 1125 of the Bankruptcy Code is "crucial to the effective functioning of the federal bankruptcy system[;] . . . the importance of full and honest disclosure cannot be overstated." Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 362 (3d Cir. 1996) (citing Oneida Motor Freight, Inc. v. United Jersey Bank (In re Oneida Motor Freight, Inc.), 848 F.2d 414 (3d Cir. 1988)).

31. The "adequate information" requirement is designed to help creditors in their negotiations with Debtors over the plan. See Century Glove, Inc. v. First Am. Bank, 860 F.2d 94 (3d Cir. 1988). Section 1129(a)(2) conditions confirmation upon compliance with applicable Code provisions. The disclosure requirement of section 1125 is one of those provisions. See 11 U.S.C. 1129(a)(2); In re PWS Holding Corp., 228 F.3d 224, 248 (3d Cir. 2000). See also In re Prudential Energy Co., 58 B.R. 857, 867 (Bankr. S.D.N.Y. 1986). (Providing that adequate information in interested parties "is at the heart of the reorganization process" be also enables holders of claims and interests "to make an informed judgment about the Plan.").

{40794479:4}    7

32. It is well settled that unsupported opinions do not constitute "adequate information" for purposes of Disclosure Statement approval. See In re Egan, 33 B.R. 673, 675 (Bankr. N.D. Ill. 1983); In re East Redley Corp., 16 B.R. 429, 430 (Bankr. E.D. Pa. 1982). Rather the Debtor has a duty to provide creditors with all material facts that will enable them to make an informed judgment. In re Prudential, 59 B.R. at 768.

33. Significantly, the Debtors description of its operations during the pendency of these Chapter 11 proceedings provide absolutely no analysis as to the ongoing operations of the medical practices of Debtors WJFMD and Endo. Furthermore, the Disclosure Statement is silent as to collections on accounts receivable that Debtors had previously identified as a potential source of funding continued operations and payments of debts. As the Court may recall, Debtors had previously identified slow collections on accounts receivable as the area it could improve and streamline to fund operations of the Debtors. However, there is no discussion or disclosure concerning the amount or collectability of these accounts receivable, or any efforts taken to attempt collection.

34. Debtors identify only a single item to resolve their financial issues, which is the "sale of a non-debtor owned asset through competitive sale process to fund the Plan of Reorganization." (See Disclosure Statement pg. 13.)

35. The asset to be sold is identified as the 975 Clifton Property owned by TMB. (See Disclosure Statement pg. 22.) As discussed above, the 975 Clifton Property is 100% owned by TMB. Neither Debtors nor any equity owner of Debtors own or control TMB or the 975 Clifton Property. No agreements have been identified which would require TMB to sell the 975 Clifton Property or to turnover any net proceeds of sale to the Debtors. As set forth above, the 975

Clifton Property is currently encumbered with a mortgage securing a debt owed of more than $1.0 Million (relating to the TMB $1.0 Million Loan), FCB has filed foreclosure proceedings against the property, and the TMB Forbearance Agreement is currently in default for the failure to fully payoff indebtedness by the December 31, 2018 Forbearance Maturity Date.  As a result of the default the full debt encumbering the 975 Clifton Property has matured.  None of this information regarding the sole property to fund the Plan of Reorganization was disclosed by Debtors.

36. The Disclosure Statement is also inadequate for failing to provide any information regarding the listing of the 975 Clifton Property (how long, what realtor, etc) and fails to disclose that even if successfully sold for the listing price of $1.5 Million, more than $1.0 Million of proceeds would be used first to pay the TMB $1.0 Million loan secured by a mortgage on the Property.

37. The Disclosure Statement also states that "debtors intend to refinance their debt owed to FCB prior to March 31, 2019."  (See Disclosure Statement pg. 22)  Although this is consistent with Debtors' requirement under their Forbearance Agreement with FCB to have the 999 Clifton Property refinanced by March 31, 2019, they provide no details on the steps they are taking to accomplish this.  The 999 Clifton Property has a final judgment of foreclosure with a scheduled foreclosure sale.  By agreement the foreclosure sale is adjourned as long as the Forbearance Agreement is not in default.  However, if the 999 Clifton Property is not refinanced and the Loans repaid by March 31, 2019 as provided in the Forbearance Agreement, FCB will be permitted to directly proceed to Sheriff's Sale of the 999 Clifton Property.  FCB also has the right to proceed with a foreclosure sale in if there is an unpaid payment or performance default

concerning the 999 Clifton Property. As provided and previously approved by the Court, Debtors' leases end upon the expiration of the Forbearance Period or Sheriff's sale of the 999 Clifton Property. Debtors' lack of disclosure of its efforts to refinance the property by the March 31, 2019 is inadequate considering the dire consequences for the Debtors for their failure to refinance by the deadline.

## RESERVATION OF RIGHTS

38. FCB reserves its right to object to any proposed modifications to the Disclosure Statement, and expressly reserves any and all objections it may have to confirmation of the Plan.

39. FCB reserves its right to supplement this Objection, including at the hearing on approval of the Disclosure Statement.

WINDELS MARX LANE & MITTENDORF, LLP
Attorneys for Creditor
First Commerce Bank

By: /s/Jay Samuels
Jay Samuels

Dated: January 10, 2019