**McMANIMON, SCOTLAND & BAUMANN, LLC**
75 Livingston Avenue
Roseland, NJ 07068
(973) 622-1800
Anthony Sodono, III (asodono@msbnj.com)
Sari B. Placona (splacona@msbnj.com)
*Counsel to William Focazio, MD, P.A. and*
*Endo Surgical Center of North Jersey, P.C.,*
*Chapter 11 Debtors and Debtors-in-Possession*

---

| | |
|---|---|
| In re:<br><br>WILLIAM FOCAZIO, MD, P.A. and<br>ENDO SURGICAL CENTER OF NORTH<br>JERSEY, P.C.<br><br>     Debtors. | Case No. 18-10752 (VFP)<br>Jointly Administered<br><br>Chapter 11<br><br>Honorable Vincent F. Papalia, U.S.B.J. |

---

## THIRD AMENDED CHAPTER 11 PLAN OF REORGANIZATION

William Focazio, MD, P.A. ("Focazio MD PA"), and Endo Surgical Center of North Jersey, P.C. ("Endo Surgical") (collectively, the "Debtors"), Debtors / Plan Proponents respectfully submit their Third Amended Plan of Reorganization pursuant to Chapter 11, Title 11 of the United States Code, in the form annexed hereto and made a part hereof.

**McMANIMON, SCOTLAND & BAUMANN, LLC**
*Counsel to William Focazio, MD, P.A. and*
*Endo Surgical Center of North Jersey, P.C.,*
*Chapter 11 Debtors and Debtors-in-Possession*

By:   /s/ Anthony Sodono, III
     ANTHONY SODONO, III

     /s/ William Focazio
     WILLIAM FOCAZIO

Dated: February 11, 2021

## TABLE OF CONTENTS

**PAGE**

I. ...................................................................................................................................... 4

INTRODUCTION ............................................................................................................... 4

II. .................................................................................................................................... 4

CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ........................... 4

   A.   General Overview ...................................................................................................... 4

   B.   Definitions.................................................................................................................. 5

   C.   Unclassified Claims ................................................................................................. 10

      1.   Administrative Expenses and Fees ................................................................ 11

      2.   Priority Tax Claims......................................................................................... 14

   D.   Classified Claims and Interests ............................................................................... 24

      1.   Classes of Secured Claims ............................................................................. 24

      2.   Priority Non-Tax Claims................................................................................. 25

      3.   Class of General Unsecured Claims................................................................ 25

      4.   Class(es) of Equity Interest Holders .............................................................. 27

   E.   Acceptance or Rejection of Plan .............................................................................. 27

   F.   Means of Effectuating the Plan ................................................................................ 27

      1.   Funding for the Plan....................................................................................... 27

      2.   The Management Company shall only receive a monthly management fee only after the Debtors exceed a break-even point for a given month. ................................................. 28

      3.   Post-Confirmation Management ..................................................................... 28

      4.   Disbursing Agent ........................................................................................... 29

III. .................................................................................................................................. 29

TREATMENT OF MISCELLANEOUS ITEMS ................................................................ 29

   A.   Executory Contracts and Unexpired Leases ............................................................. 29

      1.   Rejections....................................................................................................... 29

   B.   Changes in Rates Subject to Regulatory Commission Approval ............................... 30

   C.   Retention of Jurisdiction. ......................................................................................... 30

   D.   Procedures for Resolving Contested Claims............................................................. 33

   E.   Notices under the Plan ............................................................................................. 33

IV. .................................................................................................................................. 33

EFFECT OF CONFIRMATION OF PLAN ....................................................................... 33

   A.   Discharge ................................................................................................................ 33

   B.   Release of Claims .................................................................................................... 34

   C.   Modification of Plan ................................................................................................ 35

   D.   Revesting of Property in the Debtor ......................................................................... 36

   E.   Modification of Plan ................................................................................................ 36

F.    Post-Confirmation Conversion/Dismissal.........................................................................36

4831-7662-4604, v. 1

# I.

# INTRODUCTION

Focazio MD PA and Endo Surgical are the Debtors in this Chapter 11 bankruptcy case.  On January 13, 2018, the Debtors each commenced a bankruptcy case by filing voluntary Chapter 11 petitions under the United States Bankruptcy Code ("Bankruptcy Code"), 11 U.S.C. § 101 et seq.  This document is the Third Amended Chapter 11 plan of reorganization ("Plan") proposed by the Debtors / Proponents.  Sent to you in the same envelope as this document is the Disclosure Statement which has been approved by the United States Bankruptcy Court for the District of New Jersey (the "Court"), and which is provided to help you understand the Plan.

This is a reorganizing plan.  The Proponents seek to accomplish payments under the Plan by satisfying Administrative Expense Claims in full on the Effective Date or as otherwise agreed by holders of allowed administrative claims, and entering into a management agreement with a management company which will assist the Debtors by infusing funds into operations when needed and managing the facility to ensure a more effective and fluid collection process.  The Effective Date of the proposed Plan is the first day of the month following the date which is thirty (30) days after the date on which the Confirmation Order becomes a Final Order.

# II.

# CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.     **General Overview**

As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes according to their right to priority of payments as provided in the Bankruptcy Code. The

Plan states whether each class of claims or interests is impaired or unimpaired.  The Plan provides

the treatment each class will receive under the Plan.

**B.      Definitions**

**Scope of Definitions.** For purposes of this Plan, except as expressly otherwise provided or unless

the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings

assigned to them in this Section of the Plan.  In all references herein to any parties, persons,

entities, or corporations, the use of any particular gender or the plural or singular number is

intended to include the appropriate gender or number as the text may require.

**1.**      **Administrative Expense** shall mean any cost or expense of administration of the Chapter

11 case allowable under Section 507(a) of the Bankruptcy Code, including, without

limitation, any actual and necessary expenses of preserving the estate of the Debtors, any

actual and necessary expense of operating the businesses of the Debtors, any indebtedness

or obligation incurred or assumed by the Debtors in connection with the conduct of its

business or for the acquisition or lease of property or the rendition of services to the

Debtors, all allowances of compensation and reimbursement of expenses, any fees or

charges assessed against the estate of any Debtors under Chapter 123, Title 28, of the

United States Code, and the reasonable fees and expenses incurred by the Proponents in

connection with the proposal and confirmation of this Plan.

**2.**      **Allowed** when used as an adjective preceding the words "Claims" or "Equity Interest,"

shall mean any Claim against or Equity Interests of the Debtors, proof of which was filed

on or before the date designated by the Bankruptcy Court as the last date for filing proofs

of claim or Equity Interest against such Debtors, or, if no proof of claim or Equity Interest

is filed, which has been or hereafter is listed by the Debtors as liquidated in amount and not

5

disputed or contingent and, in either case, a Claim as to which no objection to the allowance thereof has been interposed with the applicable period of limitations fixed by the Plan, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, Local Rules, or as to which any objection has been interposed and such Claim has been allowed in whole or in part by a Final Order.  Unless otherwise specified in the Plan, "Allowed Claim" and "Allowed Equity Interest" shall not, for purposes of computation of distributions under the Plan, include interest on the amount of such Claim or Equity Interest from and after the Petition Date.

**3.**      **Allowed Administrative Expense** shall mean any Administrative Expense allowed under Section 507(a)(1) of the Bankruptcy Code.

**4.**      **Allowed Unsecured Claim** shall mean an Unsecured Claim that is or has become an Allowed Claim.

**5.**      **Bankruptcy Code** shall mean the Bankruptcy Reform Act of 1978, as amended, and as codified in Title 11 of the United States Code.

**6.**      **Bankruptcy Court** shall mean the United States Bankruptcy Court for the District of New Jersey having jurisdiction over the Chapter 11 Case and, to the extent of any reference made pursuant to 28 U.S.C. Section 158, the unit of such District Court constituted pursuant to 28 U.S.C. Section 151.

**7.**      **Bankruptcy Rules** shall mean the rules and forms of practice and procedure in bankruptcy, promulgated under 28 U.S.C. Section 2075 and also referred to as the Federal Rules of Bankruptcy Procedure.

**8.**      **Business Day** means and refers to any day except Saturday, Sunday, and any other day on which commercial banks in New Jersey are authorized by law to close.

4831-7662-4604, v. 1

9.   **Chapter 11 Case** shall mean a case under Chapter 11 of the Bankruptcy Code in which Focazio MD PA and Endo Surgical are the Debtors.

10.  **Claim** shall mean any right to payment from the Debtors whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtors whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured. All claims as such term is defined in section 101(5) of the Bankruptcy Code.

11.  **Class** shall mean a grouping of substantially similar Claims or Equity Interests for common treatment thereof pursuant to the terms of this Plan.

12.  **Code** shall mean Title 11 of the United States Code, otherwise known as the Bankruptcy Code.

13.  **Confirmation** shall mean the entry of an Order by this Court approving the Plan in accordance with the provisions of the Bankruptcy Code.

14.  **Confirmation Hearing** shall mean a hearing conducted before the Bankruptcy Court for the purpose of considering confirmation of the Plan.

15.  **Confirmation Order** shall mean an Order of the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

16.  **Creditor** shall mean any person that has a Claim against the Debtors that arose on or before the Petition Date or a Claim against the Debtors' estates of any kind specified in section 502(g), 502(h) or 502(i) of the Bankruptcy Code. This includes all persons, corporations, partnerships, or business entities holding claims against the Debtors.

7

**17.**    **Debt** means, refers to and shall have the same meaning ascribed to it in Section 101(12) of the Code.

**19.**    **Debtors** shall mean Focazio MD PA and Endo Surgical.

**20.**    **Disbursing Agent** shall mean the Reorganized Debtors or any party appointed by and subject to Court approval, which shall effectuate this Plan and hold and distribute consideration to be distributed to holders of Allowed Claims and Allowed Equity Interests pursuant to the provisions of the Plan and Confirmation Order.

**21.**    **Disclosure Statement** means and refers to the Disclosure Statement filed by the Debtors as required pursuant to Section 1125 et seq. of the Bankruptcy Code.

**22.**    **Effective Date** shall mean the first day of the month following the date which is thirty (30) days after the date on which the Confirmation Order becomes a Final Order.

**23.**    **Equity Interest Holder** shall mean the holder of an equity interest in the Debtors.

**24.**    **Equity Interest** shall mean any interest in the Debtors represented by stock, warrants, options, or other rights to purchase any shares of stock in the Debtors.

**25.**    **Final Order** shall mean an order of the Bankruptcy Court or a court of competent jurisdiction to hear appeals from the Bankruptcy Court which, not having been reversed, modified, or amended, and not being stayed, and the time to appeal from which or to seek review or rehearing of which having expired, has become final and is in full force and effect.

**26.**    **Impaired** when used as an adjective preceding the words "Class of Claims" or "Class of Equity Interest", shall mean that the Plan alters the legal, equitable, or contractual rights of the member of that class.

4831-7662-4604, v. 1

27.    **Person** shall mean an individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, or a government or any political subdivision thereof or other entity.

27.    **Petition Date** shall mean the date on which the Debtors filed this petition for relief commencing the Chapter 11 Case – January 13, 2018.

28.    **Plan** shall mean the Plan of Reorganization filed in these Proceedings, together with any additional modifications and amendments.

29.    **Priority Non-Tax Claim** shall mean a Claim entitled to priority under sections 507(a)(2),(3), (4), (5), (6) or (7) of the Bankruptcy Code, but only to the extent it is entitled to priority in payment under any such subsection.

30.    **Priority Tax Creditor** shall mean a Creditor holding a priority tax claim.

31.    **Priority Tax Claim** shall mean any Claim entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code, but only to the extent it is entitled to priority under such subsection.

32.    **Proceedings** shall mean the Chapter 11 Case of the Debtors.

33.    **Professional Persons** means and refers to all attorneys, accountants, appraisers, consultants, and other professionals retained or to be compensated pursuant to an Order of the Court entered under Sections 327, 328, 330, or 503(b) of the Bankruptcy Code.

34.    **Professional Claim** means and refers to a claim by any and all professionals as provided for in Sections 327, 328, 330 and 503(b) of the Bankruptcy Code.

35.    **Proponent** means Focazio MD PA and Endo Surgical.

36.    **Reorganized Debtors** means the Debtors after confirmation of the Plan.

4831-7662-4604, v. 1

37. **Secured Claim** means and refers to a Claim which is secured by a valid lien, security interest, or other interest in property in which the Debtors have an interest which has been perfected properly as required by applicable law, but only to the extent of the value of the Debtors' interest in such property, determined in accordance with Section 506(a) of the Bankruptcy Code.

38. **Unsecured Claim** shall mean any Claim against the Debtors which arose or which is deemed by the Bankruptcy Code to have arisen prior to the Petition Date for such Debtors, and which is not (i) a secured claim pursuant to Section 506 of the Bankruptcy Code, as modified by section 1111(b) of the Bankruptcy Code, or (ii) a Claim entitled to priority under sections 503 or 507 of the Bankruptcy Code. "Unsecured Claim" shall include all Claims against the Debtors that are not expressly otherwise dealt with in the Plan.

39. **Other Definitions** a term used and not defined herein but that is defined in the Bankruptcy Code shall have the meaning set forth therein.  The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan.  Moreover, some terms defined herein are defined in the section in which they are used.

C.    **Unclassified Claims**

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code.  As such, the Proponent has not placed the following claims in a class. The treatment of these claims is provided below.

10

## 1. Administrative Expenses and Fees

Administrative expenses are claims for costs or expenses of administering the Debtors' Chapter 11 cases which are allowed under Code Section 503(b). Fees payable to the Clerk of the Bankruptcy Court and the Office of the United States Trustee were also incurred during the Chapter 11 Case.  The Code requires that all administrative expenses be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.  Under the Debtors' plan, Administrative Expenses Claims will not be paid upon confirmation but will be paid in the plan over time in full.

The following chart lists all of the Debtors' unpaid administrative fees and expenses ("Compensation"), an estimate of future professional fees and other administrative claims and fees and their treatment the Plan:

**Focazio MD PA Claims**

| NAME | AMOUNT ESTIMATED | TREATMENT | TYPE OF CLAIM |
|---|---|---|---|
| Trenk, DiPasquale, Della Fera & Sodono P.C. | $22,685.11[1] | Payment in full on Effective Date, or through other agreement | Administrative |
| McManimon, Scotland & Baumann, LLC | $65,000[2] | Payment in full on Effective Date, or through other agreement | Administrative |
| Bederson, LLP | $120,000[3] | Payment in full on Effective Date, or through other agreement | Administrative |
| Office of U.S. Trustee Fees | Approximately $4,243.92 | Payment in full on Effective Date | Administrative |
| Expenses arising in the ordinary course of business after the Petition Date | Approximately $136,956.12 | Payment through the Plan as follows: payments over five (5) years: $2,282 monthly[4] | Administrative |
| **APPROXIMATE TOTAL** | $348,885.15  <br><br><br>**(estimated)** | | |

---

[1] This amount is approximate amount owed as of September 30, 2018.
[2] This amount is estimated and owed as of February 10, 2021. Additional fees will accrue through the Effective Date.
[3] This amount is estimated as of February 10, 2021.  Additional fees  will accrue through the Effective Date.
[4] All payments under the plan commence on the Effective Date.

4831-7662-4604, v. 1

**Endo Surgical Claims**

| NAME | AMOUNT ESTIMATED | TREATMENT | TYPE OF CLAIM |
|---|---|---|---|
| Trenk, DiPasquale, Della Fera & Sodono P.C. | $61,484.95 | Payment in full on Effective Date, or through other agreement | Administrative |
| McManimon, Scotland & Baumann, LLC | $60,000[5] | Payment in full on Effective Date, or through other agreement | Administrative |
| Bederson, LLP | $120,000[6] | Payment in full on Effective Date, or through other agreement | Administrative |
| Rabinowitz, Lubetkin & Tully, LLC | approximately $20,000 | Payment in full on Effective Date, or through other agreement | Administrative |
| The Serruto Law Firm, P.C. special counsel | $24,120.50 | Payment in full on Effective Date, or through other agreement | Administrative |
| Office of U.S. Trustee Fees | Approximately $10,137.76 | Payment in full on Effective Date | Administrative |
| Expenses arising in the ordinary course of business after the Petition Date | Approximately $130,000 | Payment through the Plan as follows: payments over five (5) years: $2,166 monthly.[7] | Administrative |
| **APPROXIMATE TOTAL** | $425,743.21<br><br>**(estimated)** | | |

---

[5] This amount is approximate  through February 10, 2021. Additional fees will accrue through the Effective Date.

[6] This amount is approximate through February 10, 2021. Additional fees will accrue through the Effective Date.

[7] All payments under the plan shall commence on the Effective Date.  .

13

**Court Approval of Professional Compensation and Expenses Required:**

The Court must approve all professional compensation and expenses. Each professional person requesting compensation in the case pursuant to Sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code shall file an application for allowance of final compensation and reimbursement of expenses not later than thirty (30) days after the Effective Date. Nothing herein shall prohibit each professional person from requesting interim compensation during the course of this case pending Confirmation of this Plan. No motion or application is required to fix fees payable to the Clerk's Office or the Office of the United States Trustee, as those fees are determined by statute.

All professionals have agreed to a payment plan for their administrative claims so as to allow the Debtors to confirm their plan.

**2. Priority Tax Claims**

Priority tax claims are certain unsecured income, employment and other taxes described by Code Section 507(a)(8). The Code requires, and thus this Plan provides, that each holder of such a 507(a)(8) priority tax claim receives the present value of such claim in deferred cash payments, over a period not exceeding six years from the date of the assessment of such tax.

**William Focazio MD PA**

- TAX CLAIMS - Per the Internal Revenue Service ("IRS") and State of New Jersey, Division of Taxation proofs of claim for taxes, they are owed as follows: IRS POC #2 in the amount of $175,960.23 with a priority amount of $39,693.72; IRS POC #17 priority in the amount of $109,719.95; and IRS POC #21 in the amount of $171,020.23 with a priority amount of $30,013.72; STATE OF NJ POC #1 in the amount of $14,785.54; State of New Jersey POC #4 priority in the amount of $3,129.67; State of New Jersey POC #5 in the amount of $9,977.38 with a priority amount of $9,250.87; State of New Jersey POC #14 priority in the amount of $23,420.72; State of New Jersey POC #19 in the amount of $19,093.15.

14

- *Debtor believes such claims total $297,895.76.[8] The Debtor shall make an initial payment of $25,000 to the IRS on the date of confirmation, and thereafter a balance of $272,895.76 remains. Such claim balance shall receive equal monthly installments over sixty (60) months of $4,548.26 per month. The initial $25,000 payment shall be made by the Management Company (defined below) and thereafter the payments over sixty (60) months shall be funded by the Reorganized Debtor and/or subsidized by the Management Company on an as needed basis.[9]*

The IRS and the Debtors entered into a settlement by way of a Stipulation and Consent Order (the "Stipulation") (discussed herein) (Doc. No. 449) regarding the payment of administrative claims (this is in addition to the IRS' claims set forth herein) (the "IRS Settlement"). The IRS Settlement provides for a payment of $100,000 on the Effective Date and the payment of approximately $75,000 in equal annual installments over five (5) years. Pursuant to the IRS Settlement, the IRS supports the Plan.[10]  Priority tax claims shall be satisfied in accordance with the requirements of Section 507(a)(8). The Debtors shall pay creditors holding priority tax claims over sixty (60) months in accordance with 11 U.S.C. § 1129(a)(9)(C)(ii).

Below are the priority tax claims:

---

[8] Based upon review of the IRS transcripts as of August 3, 2020, the Debtor believes $297,895.76 is the correct amount owed.

[9] The Management Company is committing up to $1 million to, among other things, subsidize and assist the Debtors' operations, expand its business, hire new employees and fund their plan.

[10] See also footnote 9.

4831-7662-4604, v. 1

| Name of Taxing Authority and Type of Tax | Estimated Amount Owed | Date of Assessment | Treatment |
|---|---|---|---|
| IRS (POC 2)[11] | $39,693.72 | | Such claims shall receive an initial pro rata payment of twenty-five thousand dollars ($25,000) on the date of confirmation and thereafter shall receive equal monthly installments over sixty (60) months. The initial pro rata payment shall be made by the Management Company (defined below) and thereafter the payments over sixty (60) months shall be funded by the Reorganized Debtor and/or the Management Company on an as needed basis.[12] |
| State of New Jersey Division of Employer Accounts (POC 4) | $3,129.67 | | Such claims shall receive an initial pro rata payment of twenty-five thousand dollars ($25,000) on the date of confirmation and thereafter shall receive equal monthly installments over sixty (60) months. The initial pro rata payment shall be made by the Management Company (defined below) and thereafter the payments over sixty (60) months shall be funded by the Reorganized Debtor and/or the Management Company on an as needed basis.[13] |

---

[11] This Plan hereby incorporates the terms filed in the Notice of Plan Supplement on November 13, 2020. See Doc. No. 455.

[12] The Management Company is committing up to $1 million to assist and subsidize the Debtors' operations and fund their plan.

[13] The Management Company is committing up to $1 million to assist and subsidize the Debtors' operations and fund theirs plan.

4831-7662-4604, v. 1

| Name of Taxing Authority and Type of Tax | Estimated Amount Owed | Date of Assessment | Treatment |
|---|---|---|---|
| State of New Jersey, Division of Taxation (POC 5)[14] | $9,250.87 | | Such claims shall receive an initial pro rata payment of twenty-five thousand dollars ($25,000) on the date of confirmation and thereafter shall receive equal monthly installments over sixty (60) months. The initial pro rata payment shall be made by the Management Company (defined below) and thereafter the payments over sixty (60) months shall be funded by the Reorganized Debtor and/or the Management Company on an as needed basis.[15] |
| State of New Jersey, Division of Employer Accounts (POC 14) | $23,420.72 | | Such claims shall receive an initial pro rata payment of twenty-five thousand dollars ($25,000) on the date of confirmation and thereafter shall receive equal monthly installments over sixty (60) months. The initial pro rata payment shall be made by the Management Company (defined below) and thereafter the payments over sixty (60) months shall be funded by the Reorganized Debtor and/or the Management Company on an as needed basis.[16] |

---

[14] This Plan hereby incorporates the terms of the Stipulation and Consent Order between the Debtors and New Jersey Division of Taxation entereed on December 9, 2020. See Doc. No. 472.

[15] The Management Company is committing up to $1 million to assist and subsidize the Debtor in operations and fund its plan.

[16] The Management Company is committing up to $1 million to assist and subsidize the Debtor in operations and fund its plan.

17

| Name of Taxing Authority and Type of Tax | Estimated Amount Owed | Date of Assessment | Treatment |
|---|---|---|---|
| IRS  (POC 17) | $109,719.95 | | Such claims shall receive an initial pro rata payment of twenty-five thousand dollars ($25,000) on the date of confirmation and thereafter shall receive equal monthly installments over sixty (60) months.  The initial pro rata payment shall be made by the Management Company (defined below) and thereafter the payments over sixty (60) months shall be funded by the Reorganized Debtor and/or the Management Company on an as needed basis.[17] |
| IRS (POC 21) | $30,013.72 | | Such claims shall receive an initial pro rata payment of twenty-five thousand dollars ($25,000) on the date of confirmation and thereafter shall receive equal monthly installments over sixty (60) months.  The initial pro rata payment shall be made by the Management Company (defined below) and thereafter the payments over sixty (60) months shall be funded by the Reorganized Debtor and/or the Management Company on an as needed basis.[18] |

---

[17] The Management Company is committing up to $1 million to assist and subsidize the Debtors' operations and fund their plan.

[18] The Management Company is committing up to $1 million to assist and subsidize the Debtors' operations and fund their plan.

4831-7662-4604, v. 1

**Endo Surgical Center of North Jersey**

- Per the  Internal Revenue Service ("IRS") and State of New Jersey, Division of Taxation proofs of claim for taxes, they are owed as follows:   IRS – POC #7 in the amount of $434,985.56 with priority being in the amount of $309,343.87; and POC #32 priority in the amount of $20,073.76; State of NJ POC #3 in the amount of $60,164.36; POC #12 priority in the amount of $503.29; POC #27  priority in the amount of $9,738.33; POC #34 priority in the amount of $1,093.74; and POC #36 priority in the amount of $6,460.98.   Debtor believes such claims total $508,541.94[19].  Such claims shall receive an initial pro rata payment of $50,000 on the date of confirmation and thereafter remains $458,541.94.  They shall receive equal monthly installments over sixty (60) months of $ 7,642.36 per month until the debt is satisfied.  The initial $50,000 payment shall be made by the Management Company (defined below) and thereafter the payments over sixty (60) months shall be funded by the Reorganized Debtor and/or the Management Company on an as needed basis.[20]

| Name of Taxing Authority and Type of Tax | Estimated Amount Owed | Date of Assessment | Treatment |
|---|---|---|---|
| IRS (POC 7-4) | $309,343.87 | | Such claims shall receive an initial pro rata payment of fifty thousand dollars ($50,000) on the date of confirmation and thereafter shall receive equal monthly installments over sixty (60) months.  The initial pro rata payment shall be made by the Management Company (defined below) and thereafter the payments over sixty (60) months shall be funded by the Reorganized Debtor and/or the Management Company on an as needed basis.[21] |

[19] Debtor believes claims total $508,541.94 based on review of transcripts.
[20] The Management Company is committing up to $1 million to, among other things, subsidize and assist the Debtors' operations, expand its business, hire new employees and fund their plan.
[21] The Management Company is committing up to $1 million to assist the Debtors' operations and fund their plan.

4831-7662-4604, v. 1

| Name of Taxing Authority and Type of Tax | Estimated Amount Owed | Date of Assessment | Treatment |
|---|---|---|---|
| State of New Jersey, Division of Taxation (POC 12) | $503.29 | | Such claims shall receive an initial pro rata payment of fifty thousand dollars ($50,000) on the date of confirmation and thereafter shall receive equal monthly installments over sixty (60) months. The initial pro rata payment shall be made by the Management Company (defined below) and thereafter the payments over sixty (60) months shall be funded by the Reorganized Debtor and/or the Management Company on an as needed basis.[22] |
| State of New Jersey, Employer Accounts (POC 27-9) | $9,738.83 | | Such claims shall receive an initial pro rata payment of fifty thousand dollars ($50,000) on the date of confirmation and thereafter shall receive equal monthly installments over sixty (60) months. The initial pro rata payment shall be made by the Management Company (defined below) and thereafter the payments over sixty (60) months shall be funded by the Reorganized Debtor and/or the Management Company on an as needed basis.[23] |

---

[22] The Management Company is committing up to $1 million to assist the Debtor in operations and fund its plan.
[23] The Management Company is committing up to $1 million to assist the Debtor in operations and fund its plan.

4831-7662-4604, v. 1

| Name of Taxing Authority and Type of Tax | Estimated Amount Owed | Date of Assessment | Treatment |
|---|---|---|---|
| Internal Revenue Service (POC 32-2) | $20,073.76 | | Such claims shall receive an initial pro rata payment of fifty thousand dollars ($50,000) on the date of confirmation and thereafter shall receive equal monthly installments over sixty (60) months. The initial pro rata payment shall be made by the Management Company (defined below) and thereafter the payments over sixty (60) months shall be funded by the Reorganized Debtor and/or the Management Company on an as needed basis.[24] |
| State of New Jersey, Division of Employer Accounts (POC 34) | $1,093.74 | | Such claims shall receive an initial pro rata payment of fifty thousand dollars ($50,000) on the date of confirmation and thereafter shall receive equal monthly installments over sixty (60) months. The initial pro rata payment shall be made by the Management Company (defined below) and thereafter the payments over sixty (60) months shall be funded by the Reorganized Debtor and/or the Management Company on an as needed basis.[25] |

---

[24] The Management Company is committing up to $1 million to assist the Debtors' operations and fund their plan.
[25] The Management Company is committing up to $1 million to assist the Debtors' operations and fund their plan.

4831-7662-4604, v. 1

| Name of Taxing Authority and Type of Tax | Estimated Amount Owed | Date of Assessment | Treatment |
|---|---|---|---|
| State of New Jersey, Division of Taxation (POC 36)[26] | $6,460.98 | | Such claims shall receive an initial pro rata payment of fifty thousand dollars ($50,000) on the date of confirmation and thereafter shall receive equal monthly installments over sixty (60) months. The initial pro rata payment shall be made by the Management Company (defined below) and thereafter the payments over sixty (60) months shall be funded by the Reorganized Debtor and/or the Management Company on an as needed basis.[27] |

On November 10, 2020, this Court entered a Stipulation and Consent Order Resolving Objections of the Internal Revenue Service ("IRS") to Debtors' Plans of Reorganization (Doc. No. 449) (the "Stipulation"). The Terms of the Stipulation are as follows:

1.    The Debtors shall tender $100,000 to the IRS for payment of the IRS' administrative claims on the effective date of the Amended Plan. The $100,000 shall be paid collectively from Endo Surgical, Focazio MD PA, and Dr. Focazio's individual case.[28]

2.    Payment of the balance of IRS' administrative claims (approximately $75,000) shall be paid over five (5) years in equal monthly installments including interest. All other

---

[26] The Debtors and the State of New Jersey, Division of Taxation ("Taxation") and Department of Labor ("Labor") settled certain claims via Stipulation and Consent Order at Docket No. 472. Pursuant to the settlement, Taxation and Labor support the Plan.

[27] The Management Company is committing up to $1 million to assist the Debtor in operations and fund its plan.

[28] Dr. Focazio has filed a separate individual chapter 11 case. Dr. focazio intends on dismissing his indiviual case. Thus, even if dismissed, Dr. Focazio remains committed, with Endo Surgical and Focazio MD PA to make sure the payment is made.

4831-7662-4604, v. 1

payments due to the IRS, as reflected in IRS' filed proofs of claim, shall be paid in accordance with the   Plan.   The Plan shall pay in full, and include post-confirmation interest on, all administrative, priority and secured (if any) amounts owed to the IRS per the federal statutory interest rate of three percent (3%).   Based on the Debtors' representations to IRS regarding the current value of the Debtors' assets, IRS agrees to reclassify substantial portions of its secured claims against the Debtors as unsecured priority claims pursuant to 11 U.S.C. § 507(d).

3.      Payments to the IRS shall be due on the Effective Date.   The IRS has the right to file a certification of default for the following reasons: (i) the IRS is not timely paid on any amounts due under the  Plan and such payments are not cured within fourteen (14) days after payments are due, (ii) the Debtors fail to remain current post-confirmation on filing all quarterly returns, or (iii) Debtors fail to make any required federal tax deposits.   Upon the filing of a certification of default, the Debtors shall have five (5) days to either file a notice  disputing that a default has occurred or to file a notice that such default has been cured. If the Debtors do not such file such a notice within five (5) days of IRS' filing of a certification of default, then the Court can enter an order converting these chapter 11 cases to chapter 7.

4.      After the Effective Date, in order to enable IRS to promptly determine whether the Debtors are timely filing Form 940 and Form 941 returns and making required deposits thereunder, the Debtors shall cause signed copies of such returns (or, if electronically filed, proof of such electronic filing) and proof of payment of deposits to be sent by facsimile to IRS Bankruptcy Specialist George Hellerman at following facsimile number: (855) 639-7682.   If the Debtors fail to make any deposits under Form 940 and 941 on the basis that the Debtors had no payroll for a given period, the Debtors shall file an affidavit to that effect to be sent by facsimile to Mr. Hellerman in the same manner.

4831-7662-4604, v. 1

5.      The IRS supports the Debtors' Plan as modified by the Stipulation.

6.      If a dispute arises under the terms of the Stipulation , the Debtors and the IRS

consent to the jurisdiction of the Bankruptcy Court to resolve such dispute.

## D.   Classified Claims and Interests

### 1.  Classes of Secured Claims

Secured claims are claims secured by liens on property of the estate.  If there are assets

available, the below creditors will be paid upon the priority they should receive, otherwise they

will be treated as an unsecured claim.  The following represent all classes containing Debtors'

secured pre-petition claims and their treatment under this Plan:

**Focazio MD PA**

- SECURED CLAIMS - First Commerce Bank ("FCB") is owed in excess of $7,671,243.94,
  however, FCB's claim is contingent and shall be waived and released in accordance with a
  settlement agreement approved by the court May 20, 2020 (Doc. 391).  FCB has also agreed
  to vote its claim in favor of the Debtor's plan as well as in the plans of the related debtors –
  William J Focazio (Case No. 19-10880) and Endo Surgical Center of North Jersey (Case No.
  18-10753) (collectively, all three cases are referred to as the "Debtors").[29]  FCB is secured
  by all or substantially all of the Debtors' assets.  In addition, FCB has a substantial unsecured
  claim in all of the Debtors' cases.

**Endo Surgical**

- SECURED CLAIMS – First Commerce Bank ("FCB") is owed in excess of $7,671,243.94,
  however, FCB's claim is contingent and shall be waived and released in accordance with a
  settlement agreement approved by the court on May 20, 2020 (See Case No. 18-10752; Doc.
  391).  FCB has also agreed to vote its claim in favor of the Debtor's plan as well as in the
  plans of the related debtors – William J Focazio (Case No. 19-10880) and William Focazio,
  MD, P.A. (Case No. 18-10752) (collectively, all three cases are referred to as the
  "Debtors").[30]  FCB is secured by all or substantially all of the Debtors assets.  In addition,
  FCB has a substantial unsecured claim in all of the Debtors' cases.  FCB supports the Plan
  and has voted in favor of the Plan.

---

[29] The claims in the Debtors' cases are virtually similar so payments in one case may be utilized to pay off debt in
another case.   Thus, the collective pro rata payment to unsecured creditors will be $600,000, which is an approximate
10% distribution.

[30] The claims in the Debtors' cases are virtually similar so payments in one case may be utilized to pay off debt in
another case.

### 2. Priority Non-Tax Claims

Certain priority non-tax claims that are referred to in Code Sections 507(a)(3), (4), (5), (6),

and (7) are entitled to priority treatment. These claims are to be treated as follows:

The Debtors do not have any such claims.

### 3. Class of General Unsecured Claims

General unsecured claims are unsecured claims not entitled to priority under Code

Section 507(a). These claims are to be treated as follows:

**Focazio MD PA**

- UNSECURED CREDITORS - Unsecured creditors are owed approximately $3,237,000.[31] Unsecured creditors shall be paid pro rata $150,000 of their allowed claims over eight (8) years. Payments will be made by the Reorganized Debtor and/or subsidized by Management Company on an as needed basis. Such payment shall be in the amount of $1,562.50 monthly.

**Endo Surgical**

- UNSECURED CREDITORS - Unsecured creditors are approximately $6,000,000 in all Debtors' cases collectively. Unsecured creditors shall be paid pro rata $300,000 of their allowed claims over eight (8) years on a monthly basis. Payments will be made by the Reorganized Debtor and/or Management Company on an as needed basis. Such payment shall be in the amount of $3,125 monthly.

**Allstate New Jersey Property and Casualty Insurance Company**

- On July 2, 2018, Allstate filed a proof of claim ("Claim 18-1) in the Focazio MD PA case in the amount of $2,942,848.75 for, among other things, breach of a settlement agreement. On July 2, 2019, Allstate filed a proof of claim ("Claim 35-1") in the Endo Surgical case for the same amount. On July 2, 2019, Allstate filed a proof of claim ("Claim 22-1") in William J. Focazio's individual case for the same amount. The Debtors and Dr. Focazio are all jointly and severally liable for the full amount of the debt. Allstate alleges that its claim is currently in the amount of $3.5 million.

- Allstate filed an adversary proceeding against Dr. William J. Focazio in his individual case seeking to have its claim deemed non-dischargeable (the "Adversary Complaint").

---

[31] The Debtors acknowledges the approximate $3 million claim filed by Allstate New Jersey Property & Casualty Insurance, Claim No. 18, however, such claim shall be treated in the Endo Surgical plan. The Allstate claim is not included in the $3,237,000 unsecured creditor pool

- The Debtors, Dr. William J. Focazio, RJ Capital and Allstate have entered into a settlement agreement (the "Settlement Agreement").[32]

- The pertinent terms of the Settlement Agreement are as follows:

1.      The Debtors and RJ Capital shall pay $600,000 through the following payments: (a) $100,000 on the Effective Date of the Plan, (b) $125,000 three (3) months after the Effective Date, (c) $125,000 six (6) months after the Effective Date, (d) $125,000 nine (9) months after the Effective Date, and (e) $125,000 twelve (12) months after the Effective Date.  The Debtors and RJ Capital shall have a seven (7) day grace period to cure any past due payments.

2.      Allstate agrees to vote in favor of any plan and/or support any plan and/or dismissal filed by the Debtors and/or William J. Focazio, as long as the terms comply with and incorporate the terms of the Settlement Agreement.

3.      Allstate shall be entitled to an immediate $3 million non-dischargeable judgment (the "Judgment") against Dr. Focazio, which Allstate shall be entitled to record, provided that it will agree to hold the Judgment in escrow and stay any collection efforts against the Debtors or Dr. Focazio so long as the Debtors and RJ Capital have not defaulted under the Settlement Agreement.  If any of the Debtors or RJ Capital default, Allstate is entitled to pursue all collection efforts against the Debtors and RJ Capital for the full judgment amount, less any payments made pursuant to the Settlement Agreement.  If the Debtors and RJ Capital make all of the payments required by paragraph 1 above on or before the dates set forth therein, and Debtors and RJ Capital comply with the provisions of paragraph 5 and 6 below until the expiration of 3 years from the Effective Date, Allstate shall provide the Debtors and RJ Capital with a Discharge of the Judgment.  RJ Capital is only responsible for the $600,000 payment and not the full $3 million non-dischargeable judgment which is the sole responsibility of Dr. Focazio.  If the $600,000 or any part thereof is not paid, then RJ Capital is responsible for such payment and Allstate can obtain a judgment for $600,000, less any amounts paid to Allstate, plus fees and costs to collect the judgment plus interest at 10% from the date of any breach, if any.  RJ Capital also subordinates its debt to Allstate's debt.

4.      Debtors and RJ Capital agree that for 3 years from the Effective Date neither they, nor any other entity Focazio owns now or in the future, or any other entity that acquires, leases or otherwise operates the ASC at 999 Clifton Avenue, Clifton, shall bill Allstate or any of its insured claimants for services that would otherwise be covered by Allstate PIP policies.

5.      Debtors and RJ Capital consent to periodic review by an Allstate SIU investigator and Allstate's counsel of the books and records of Debtors, as well as those books and records of RJ Capital relating to the Management Agreement, which records shall include copies of bank statements, and cancelled checks relating thereto.  Allstate shall provide notice at

---

[32] The parties are currently memorializing the Settlement Agreement which will be provided before the schedule confirmation date of February 26, 2021.

4831-7662-4604, v. 1

least 10 days in advance of any such review, so the Debtors and RJ Capital can prepare and arrange their schedule so as not to interfere with patient visits.

### 4. Class(es) of Equity Interest Holders

Dr. Focazio will be retaining his equity interest in the Debtors.

## E. Acceptance or Rejection of Plan

Each impaired class of Creditors with claims against the Debtors' estate shall be entitled to vote separately to accept or reject the Plan. A class of Creditors shall have accepted the Plan if the Plan is accepted by at least two-thirds in the aggregate dollar amount and more than one-half in number of holders of the allowed Claims of such class that have accepted or rejected the Plan. In the event that any impaired class of Creditors or Interest holders shall fail to accept the Plan in accordance with Section 1129(a) of the Bankruptcy Code, the Proponent reserves the right to request that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code.

## F. Means of Effectuating the Plan

### 1. Funding for the Plan

**<u>Focazio MD PA</u>**

The Reorganized Debtor is entering into a management agreement ("Management Agreement") with RJ Capital Med, LLC ("RJ Capital" or the "Management Company") to provide operational cash and subsidize payment to certain creditors including Allstate in the plan on an as needed basis. The Management Company will also provide capital to expand operations and operating capital. RJ Capital is owned and operated by Rudy Abramov.  Neither RJ Capital nor Mr. Abramov or any entity he owns, or controls has a relationship with the Debtors or Dr. Focazio, individually or any owned or controlled by or affiliated with Dr. Focazio.

The terms of the Management Agreement are as follows:

- Management Company to pay $25,000 towards priority tax claims and $50,000 towards administrative expenses are set forth above upon confirmation of the plan.  The Management Company shall also subsidize the payments required under the plan on an as needed basis.

4831-7662-4604, v. 1

- Management Company is committed to subsidize up to $1 million to assist and subsidize the Debtor with its operational needs and fund certain payments under the Plan, expand Debtor's business and increase revenues as needed.
- The Management Company shall receive a monthly management fee determined by the profitability of the Debtors.  Only after the Debtors exceed a break-even point for a given month will RJ Capital be entitled to any payment. [33]

## Endo Surgical

The Reorganized Debtor is entering into a Management Agreement with RJ Capital to provide operational cash and subsidize payment to certain creditors in the plan on an as needed basis.  It will also work with the Debtor and provide capital to expand operations.  RJ Capital is owned and operated by Rudy Abramov.  Neither RJ Capital nor Mr. Abramov or any entity he owns, or controls, has a relationship with the Debtors or Dr. Focazio, individually, or any owned or controlled by or affiliated with Dr. Focazio.

The terms of the Management Agreement are as follows:

- Management Company to pay $150,000 towards priority tax claims and administrative expenses as set forth above upon confirmation of the plan.   The Management Company shall also subsidize other payments required under the plan on an as needed basis.
- Unsecured creditors are to be paid $300,000 pro rata on their allowed claims over eight (8) years on a monthly basis. Payments will be made by the Reorganized Debtor through operations and/or the Management Company will subsidize such payments as required.
- Management Company is committed to subsidize up to $1 million to assist and subsidize the Debtors with their operational needs, fund payments under the Plan, expand Debtor's business and increase revenues.

    **2.**      **The Management Company shall only receive a monthly management fee only after the Debtors exceed a break-even point for a given month.**

    **3.**      **Post-Confirmation Management**

### Focazio MD PA

The Post-Confirmation Officers/Managers of the Debtor, and their compensation, shall be as follows:

---

[33] The relationship between the Debtors and RJ Capital is set forth in the Certification of William J. Focazio, MD (<u>See</u> Doc. No. 475)

| Name | Position | Compensation |
|------|----------|--------------|
| RJ Capital[34] | Manager | To be determined after all expenses are paid on a monthly basis. |
| Dr. William Focazio | Physician/Owner/Operator | $100,000 |

**Endo Surgical**

The Post-Confirmation Officers/Managers of the Debtor, and their compensation, shall be as follows:

| Name | Position | Compensation |
|------|----------|--------------|
| RJ Capital | Manager | To be determined after all expenses are paid on a monthly basis. |
| Dr. William Focazio | Physician/Owner/Operator | $150,000 |

**4. Disbursing Agent**

The Reorganized Debtors shall act as the disbursing agent for the purpose of making all distributions provided for under the Plan and to file all reports required under the Bankruptcy Code. The Disbursing Agent shall serve without bond and shall receive no remuneration for distribution services rendered and expenses incurred pursuant to the Plan.

**III.**

**TREATMENT OF MISCELLANEOUS ITEMS**

**A. Executory Contracts and Unexpired Leases**

**1. Rejections**

The Plan provides that all Executory Contracts and Unexpired Leases shall be assumed, unless expressly rejected. The Order confirming the Plan shall constitute an Order approving the

---

[34] See footnote 25.

4831-7662-4604, v. 1

rejection of any leases or contracts except as set forth in paragraph III(A)(1) above.  If you are a party to a contract or lease to be rejected and you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.  See Disclosure Statement for the specific date.

Any claim based on the rejection of an executory contract or unexpired lease will be barred if the proof of claim is not timely filed, unless the Court later orders otherwise.

The agreement with FCB is an executory contract as the month to month lease and the option to buy is executory.  See Doc. No. 391.  The FCB agreement be and hereby is being assumed without further order of this court.[35]

The Debtor holds a contract with Son Rise for the maintenance/rental of copy machines and printers.  Son Rise also holds a contract with the affiliated debtor – Endo Surgical.  The Son Rise contract is being assumed.

**THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF A LEASE OR CONTRACT WAS MAY 22, 2018.**

Any claim based on the rejection of an executory contract or unexpired lease will be barred if the proof of claim is not timely filed, unless the Court later orders otherwise.

**B.    Changes in Rates Subject to Regulatory Commission Approval**

The Debtors are not subject to governmental regulatory commission approval of their rates.

**C.    Retention of Jurisdiction.**

The Court shall retain jurisdiction of this case pursuant to the provisions of Chapter 11 of the Bankruptcy Code, pending the final allowance or disallowance of all Claims affected by the

---

[35] The Debtors shall, however, include the assumption of the FCB agreement in the confirmation order.

4831-7662-4604, v. 1

Plan, and to make such orders as are necessary or appropriate to carry out the provisions of this

Plan and with respect to the following matters:

(a)     To enable the Plan Proponents to consummate the Plan and to resolve any disputes arising therefrom;

(b)     To adjudicate all controversies concerning the classification, estimation or allowance of any Claim herein;

(c)     To make such Orders as are necessary or appropriate to implement the provisions of this Plan;

(d)     To determine the classification, estimation and priority of all claims against the Debtors and to re-examine any Claims which may have been allowed;

(e)     To determine applications for the rejection or assumption of executory contracts or unexpired leases pursuant to the provisions of this Plan which are not determined prior to the Confirmation date and to determine allowance of Claims for damages with respect to rejection of any such executory contracts or unexpired leases within such time as the Court may direct;

(f)     To oversee and issue further appropriate orders respecting disbursement of amounts deposited as may be required by this Plan;

(g)     To conduct hearings on valuation, as necessary, and to determine whether any party in interest is entitled to recover against any Person any Claim, whether arising under Section 506(c) of the Bankruptcy Code, or arising out of a voidable preference, a fraudulent transfer, or otherwise;

(h)     To hear and determine all applications for compensation and other Administrative Expenses;

(i)     To hear and determine any and all pending adversary proceedings or contested matters;

(j)     To determine all causes of action which may exist in favor of the Debtors;

(k)     To determine any modification of the Plan after confirmation pursuant to Section 1127 of the Code;

(l)     To enter any order, including injunctions, necessary to establish and enforce the rights and powers of the Debtors under the Plan;

4831-7662-4604, v. 1

(m)     To enter a final decree pursuant to Rule 3022 of the Bankruptcy Rules;

(n)     To hear and determine all controversies, suits and disputes, if any, as may arise in connection with the interpretation or enforcement of the Plan;

(o)     To hear and determine all controversies, suits and disputes, if any, as may arise with regard to orders of Bankruptcy Court in the Chapter 11 Case entered on or before the Confirmation Date;

(p)     To hear and determine any and all controversies and disputes arising under, or in connection with, the Plan;

(q)     To hear and determine any and all objections to payments under the Plan;

(r)     To liquidate damages in connection with any disputed, contingent or unliquidated Claims;

(s)     To adjudicate all Claims to a security or ownership interest in any property of the Debtors or in any proceeds thereof;

(t)     To adjudicate all causes of action to recover all assets and properties of the Debtors wherever located;

(u)     To enter any order, including injunctions necessary to enforce the title, rights and powers of the Debtors, and to impose such limitations, restrictions, terms and conditions on such title rights and powers as the Bankruptcy Court may deem necessary or appropriate; and

(v)     To make such orders as are necessary or appropriate to carry out the provisions of the Plan, including but not limited to orders interpreting or enforcing the provisions thereof.

In addition, the Court shall retain jurisdiction to implement the provisions of the Plan in the manner as provided under Section 1142, sub-paragraphs (a) and (b) of the Bankruptcy Code. If the Court abstains from exercising, or declines to exercise jurisdiction, or is otherwise without jurisdiction over any matter set forth in this Section, or if the Debtors or the reorganized debtors elect to bring an action or proceeding in any other forum, then this Section shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court, public authority or commission having competent jurisdiction over such matters.

**D.    Procedures for Resolving Contested Claims.**

Objections to Claims and interests, except for those Claims more specifically deemed Allowed in the Plan, may be filed by the reorganized debtors or any party in interest up to and including sixty (60) days following the entry of the Confirmation Order. With respect to disputed Claims or interests, the Disbursing Agent will hold in a separate interest bearing reserve account such funds as would be necessary in order to make the required distribution on the Claim or interest, as listed either in the Debtors' schedules or the filed proof(s) of claim.

**E.    Notices under the Plan**

All notices, requests or demands with respect to this Plan shall be in writing and shall be deemed to have been received within five (5) days of the date of mailing, provided they are sent by registered mail or certified mail, postage prepaid, return receipt requested, and if sent to the Proponent, addressed to:

> Anthony Sodono, III, Esq., and Sari B. Placona, Esq.
> c/o McManimon, Scotland & Baumann, LLC
> 75 Livingston Avenue
> Roseland, New Jersey 07068

**IV.**

**EFFECT OF CONFIRMATION OF PLAN**

**A.    Discharge**

This Plan provides that upon confirmation of the Plan, Debtors shall be discharged of liability for payment of debts incurred before Confirmation, to the extent specified in 11 U.S.C.§ 1141. Any liability, however, imposed by the Plan will <u>not</u> be discharged until Plan payments are made in full. If Confirmation of this Plan does not occur, the Plan shall be deemed null and void. In such event, nothing contained in this Plan shall be deemed to constitute a waiver or release of

33

any claims against the Debtors or their estates or any other persons, or to prejudice in any manner the rights of the Debtors or their estates or any person in any further proceeding involving the Debtors or their estates. The provisions of this Plan shall be binding upon Debtors, all Creditors and all Equity Interest Holders, regardless of whether such Claims or Equity Interest Holders are impaired or whether such parties accept this Plan, upon Confirmation thereof.  Moreover, any judgments docketed against the Debtors or their real properties in the State of New Jersey and any county or subdivision thereof will be expunged upon the Effective Date of the Plan.

**B.    Release of Claims**

Except as otherwise expressly provided for in this Plan, the distributions and rights afforded in the Plan shall be complete and full satisfaction and release, effective as of the Effective Date, of all Claims against the Debtors or any of their assets or properties of any nature whatsoever. Commencing on the Effective Date, except as otherwise expressly provided for in this Plan, all Claimants are forever releasing, waiving, and discharging and shall be precluded forever from asserting against the Debtors and their respective agents, employees, principals, members, officers, shareholders, representatives, financial advisors, accountants, attorneys, or employees and their respective assets and properties any other or further claims, obligations, suits, judgments, liens, encumbrances, damages, debts, rights, causes of action, and liabilities whatsoever arising on or prior to the Effective Date in any way relating to the Debtors, the conduct of the Debtors' businesses or affairs, the Chapter 11 Case, or the Plan, including but not limited to all principal and accrued and unpaid interest on the debts of the Debtors based on any act or omission, transaction or other activity or security instrument or other agreement of any kind or nature occurring, arising or existing prior to the Effective Date, that was or could have been the subject of any Claim, whether or not Allowed; provided, however, that such release, waiver and discharge

34

shall not apply in any respect to any acts or omission that are the result of fraud, gross negligence or willful misconduct by the Debtors from the Petition Date to the Effective Date.

On and after the Effective Date, as to every Claim, every Holder of a Claim shall be precluded from asserting against the Debtors and his respective agents, employees, principals, officers, members, shareholders, representatives, financial advisors, accountants, attorneys or employees and its respective assets and/or properties any further Claim based on any document, instrument, act, omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date.

Pursuant to Bankruptcy Rule 9019, confirmation of the Plan shall constitute, and all consideration distributed under this Plan shall be in exchange for and in complete satisfaction, settlement, and release of and an injunction against, all as of the Effective Date, any and all Claims, demands, allegations or causes of action, against the Debtors and their respective agents, representatives, officers, shareholders, members, employees, financial advisors, accountants, attorneys, or employees for any liability for actions taken or omitted to be taken in good faith under or in connection with the Plan or in connection with the Chapter 11 case or the operation of the Debtors during the pendency of the Chapter 11 case.

C.    **Modification of Plan**

The Proponent of the Plan may modify the Plan at any time before Confirmation.  The Court may, however, require a new disclosure statement or revoting on the Plan if Proponent modifies the Plan before Confirmation.  ***IF YOU ALREADY VOTED ON THE DEBTORS' PRIOR PLAN YOU NEED NOT SUBMIT ANOTHER VOTE SINCE THIS AMENDED PLAN DOES NOT AFFECT ANY UNSECURED CREDITOR.***

4831-7662-4604, v. 1

The Proponent may also seek to modify the Plan at any time after Confirmation so long as (1) the Plan has not been substantially consummated, and (2) the Court authorizes the proposed modification after notice and a hearing.

### D.    Revesting of Property in the Debtor

Except as provided in Section IV.E. hereinafter, and except as provided elsewhere in the Plan, the Confirmation revests all property of the estates in the Debtors.

### E.    Modification of Plan

The Proponents of the Plan may modify the Plan at any time before Confirmation.  The Court may, however, require a new disclosure statement or revoting on the Plan if Proponent modifies the Plan before Confirmation.

### F.    Post-Confirmation Conversion/Dismissal

A creditor or party in interest may bring a motion to convert or dismiss the case under § 1112(b), after the Plan is confirmed, if there is a default in performing under the Plan. If the Court orders the case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7 estate, and the automatic stay will be reimposed upon the revested property only if relief from stay was not previously granted by the Court during this case.

### G.    Post-Confirmation Quarterly Fees

Quarterly fees pursuant to 28 U.S.C. Section 1930 (a)(6) continue to be payable to the office of the United States trustee post-confirmation until such time as the cases are converted dismissed or closed pursuant to a final decree.   The Debtors are also responsible to file quarterly operating reports until the cases are converted, dismissed or closed pursuant to a final decree.

36

**McMANIMON, SCOTLAND
& BAUMANN, LLC**

*Counsel to William Focazio, MD, P.A. and Endo
Surgical Center of North Jersey, P.C., Chapter 11
Debtors and Debtors-in-Possession*

By:    /s/ Anthony Sodono, III
      ANTHONY SODONO, III

      /s/ William Focazio
      WILLIAM FOCAZIO

February 11, 2021

4831-7662-4604, v. 1