**McMANIMON, SCOTLAND & BAUMANN, LLC**
75 Livingston Avenue
Roseland, NJ 07068
(973) 622-1800
Anthony Sodono, III (asodono@msbnj.com)
Sari B. Placona (splacona@msbnj.com)
*Counsel to William Focazio, MD, P.A. and*
*Endo Surgical Center of North Jersey, P.C.,*
*Reorganized Chapter 11 Debtors and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>WILLIAM FOCAZIO, MD, P.A. and ENDO SURGICAL CENTER OF NORTH JERSEY, P.C.<br><br>Debtors. | Case No. 18-10752 (VFP)<br>Jointly Administered<br><br>Chapter 11<br><br>Hearing Date & Time:<br>August 3, 2021 at 10:00 a.m. |

**DEBTORS' MOTION FOR AN ORDER (I) AUTHORIZING MODIFICATION OF DEBTORS' THIRD AMENDED PLAN OF REORGANIZATION PURSUANT TO 11 U.S.C. § 1127(b); AND (II) DETERMINING THAT FURTHER DISCLOSURE AND RESOLICITATION OF VOTES ARE NOT REQUIRED PURSUANT TO 1127(c) OF THE BANKRUPTCY CODE**

William J. Focazio, M.D., P.A. ("Focazio MD PA"), and Endo Surgical Center of North Jersey, P.C. ("Endo Surgical," together with Focazio MD PA, referred to as the "Debtors"), Debtors in the above-captioned chapter 11 bankruptcy case, by and through their attorneys, McManimon, Scotland & Baumann, LLC, hereby submit this motion (the "Motion") for an order (i) authorizing modification of Debtors' third amended plan of reorganization pursuant to 11 U.S.C. § 1127(b); and (ii) determining that further disclosure and resolicitation of votes are not required pursuant to 1127(c) of the bankruptcy code. In support of this Motion, the Debtors respectfully represent as follows:

## PRELIMINARY STATEMENT

The modification to the original confirmed plan is solely limited to replace RJ Capital, the funding source of the original plan, with a replacement funding company – SPE Ltd. ("SPE").[1] There are no other changes, material or otherwise, that affect creditors.

## JURISDICTION

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, dated September 18, 2012 (Simandle, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The legal and statutory predicates for the relief sought herein are sections 105, 502, 1123(a), 1124, 1125, 1126, 1127 and 1128 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rules 2002, 3003, 3016, 3017, 3018, 3020, and 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and D.N.J. LBR 3018-2 of the Local Rules of the United States Bankruptcy Court for the District of New Jersey (the "Local Rules").

## BACKGROUND FACTS

**Corporate Debtors**

3. Focazio MD PA and Endo Surgical each filed its own voluntary Chapter 11 petition on January 13, 2018. On March 4, 2021, the Court entered an Order Confirming the Third Amended Chapter 11 Plan of Focazio MD PA and Endo Surgical.

---

[1] Payment dates are also changed since the Debtors did not have the funds available to tender payments as per the plan, however, payment amounts remain the same.

4. Dr. Focazio filed his own Chapter 11 petition on January 15, 2019. See Case No. 19-10880. On March 8, 2021, the Court entered an Order dismissing Dr. Focazio's case.

5. On November 12, 2020, the Court entered an Order Approving the First Amended Disclosure Statement. See ECF 451. On November 13, 2020, the Debtors filed the Second Modified Disclosure Statement. See ECF 453.

6. On December 13, 2020, the Debtors filed a Certification of William J. Focazio in support of confirmation. See ECF 475. Attached to that Certification is a Certification of Rudy Abramov on behalf of RJ Capital. Mr. Abramov's Certification stated RJ Capital agreed to provide financial and support services to the Debtors, more specifically outlined in a management agreement. See ECF 475-1.

7. More specifically, Mr. Abramov's Certification states, "RJ Capital will, inter alia, provide certain working capital…" Further, Mr. Abramov states, "RJ Capital represents and warrants that it has the financial wherewithal to deliver advances requested by and needed by the Entities to efficiently operate their respective businesses." Moreover, "RJ Capital Med, LLC is committed to providing Services…" Id.

8. On February 11, 2021, the Debtors filed their Third Amended Chapter 11 Plan. See ECF 489.

9. On February 25, 2021, Rudy Abramov filed a Supplemental Certification on behalf of RJ Capital. See ECF 499. The Supplemental Certification provided the Court and parties clarification to the first certification submitted. The Supplemental Certification provided the basis to confirm the Debtors' plan and on which creditors relied. Moreover, the court viewed the certification as critical to confirm the plan.

4819-9945-1633, v. 1

10. The Supplemental Certification states, "RJ Capital will provide…a funding commitment to support ongoing operations and other certain initiatives." Id. Even more, "RJ Capital possesses **at least one million ($1,000,000) dollars** in its bank account to fund certain payments under the plan." Id. (Emphasis added).

11. RJ Capital agreed to fund the Allstate Settlement.

12. In addition, *"[a]ll payments required to be made on the Effective Date under the confirmed Chapter 11 Plans and the Order in Dr. Focazio's individual bankruptcy case approving the settlement with the Chapter 11 Trustee and dismissing Dr. Focazio's individual Chapter 11 bankruptcy case is being funded by RJ Capital."* Id. (Emphasis added). The Debtors depended on and relied upon the representations of Mr. Abramov and RJ Capital to confirm their plan and make payments under the plan.

13. Attached to the Supplemental Certification is a copy of the Management Services Agreement (the "Management Agreement") executed by the Plaintiffs and Rudy Abramov. See ECF 499.

14. On March 4, 2021, this Court entered an Order Confirming Third Amended Plan (the "Plan"). See ECF 501.

15. Numerous payments under the Plan were to commence by May 1, 2021. For an unbeknownst reason, RJ Capital decided not to make *any* payments under the Plan and withdrew from participating in any manner with the Debtors going forward. Thus, the Debtors were in dire need of a replacement funding source. After RJ Capital withdrew, the Debtors began negotiating immediately for new funding.

16. Under the original confirmed Plan, a payment in the amount of $100,000 was due to Allstate on May 1, 2021. The parties had a seven-day grace period to make such payment. This payment was funded by RJ Capital.

17. Payments were required to the Office of the United States Trustee and the Internal Revenue Service, amongst others, which are also past due.

18. Failure to make the payments in the Debtors' cases and on behalf of Dr. Focazio are detrimental to the Debtors, Dr. Focazio and creditors. If the Debtors' cases convert to Chapter 7, Dr. Focazio loses everything he has worked so hard for, creditors do not get paid and employees are out of work. Accordingly, the Debtors require a modification to the Plan.

**Dr. Focazio's Individual Case**

19. On January 15, 2019, William J. Focazio filed his Chapter 11 Voluntary Petition. See Case No. 19-10880.

20. On May 17, 2019, Edward A. Phillips was appointed as the Chapter 11 Trustee (the "Trustee"). See Case No. 19-10880; ECF 73.

21. After years of contentious motion practice, the parties reached a settlement. On February 11, 2021, William J. Focazio filed a Motion to Approve a Settlement Dismissing the Chapter 11 Case (the "Settlement Motion"). See Case No. 19-10880; ECF 251.

22. On March 8, 2021, the Court entered an Order Approving the Settlement Motion. See Case No. 19-10880; ECF 266. The Order called for certain payments to be made by Dr. Focazio to the Trustee. Specifically, the first payment was due within ten (10) business days after the Trustee provided an accounting the Debtor.

23. The Order also dismissed Dr. Focazio's individual bankruptcy case, however, certain payments are still required to be paid to the IRS, and other creditors.

24. RJ Capital was responsible to fund the payments. Such payments have not been tendered.

25. A payment of $135,548 was due to Edward Phillips, Chapter 11 Trustee of Dr. Focazio's individual bankruptcy case. This payment has not been funded by RJ Capital.

26. Failure to make the payments in the Debtors' cases and on behalf of Dr. Focazio are hereby detrimental to the Debtors, Dr. Focazio and creditors . Dr. Focazio is at risk of losing everything, creditors will not receive a distribution, employees will be without a job and two viable businesses will go dark. In short, Dr. Focazio requires a replacement source of funding for the required payments.

## THE PROPOSED MODIFICATIONS

27. R.J. Capital was required to fund the Debtors' plan payments, as well as certain payments due on behalf of Dr. Focazio. R.J. Capital is no longer willing to fund such payments. Accordingly, to preserve the Debtors' businesses, employees, patients, and Dr. Focazio's livelihood, the Debtors have found a replacement for R.J. Capital. Dr. Focazio and his professionals have worked feverishly since the Confirmation Date to find an alternative funding source.

28. The funding for the Debtors' plan payments and Dr. Focazio, individually, will be tendered by SPE. A copy of the term sheet between the Debtors and SPE is attached to the Certification of William J. Focazio, MD as Exhibit A.

29. The Management Agreement between the Debtors and R.J. Capital is void and no longer in effect.

30. The requested modification will allow for the Debtors' to make the required payments (past due) and due in the near future.

**The Court Should Approve the Proposed Modification**

31. The modification will allow the Debtors to emerge from these Chapter 11 cases without further delay; (ii) enable the Reorganized Debtors to provide their creditors with payments; (iii) preserve the Debtors' assets; and (iv) keep the Debtors' employees employed.

32. Section 1127 of the Bankruptcy Code, in relevant part, provides:

> (b) The proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and before substantial consummation of such plan, but may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and 1123 of this title. Such plan as modified under this subsection becomes the plan only if circumstances warrant such modification and the court, after notice and a hearing, confirms such plan as modified, under section 1129 of this tile.
>
> (c) The proponent of a modification shall comply with section 1125 of this title with respect to the plan as modified.
>
> (d) Any holder of a claim or interest that has accepted or rejected a plan is deemed to have accepted or rejected, as the case may be, such plan as modified, unless, with the time fixed by the court, such holder changes such holder's previous acceptance or rejection.

11 U.S.C. § 1127.

33. The proposed modification satisfies section 1127(b) because the circumstances warrant the modification and the Plan as modified meets the requirements of sections 1122, 1123, and 1129 of the Bankruptcy Code.

34. Rather than subject the holders of allowed claims to any further delay, the Debtors, proposed to modify the Plan to allow the Debtors to emerge from these Chapter 11 cases within the timeline contemplated by the Plan.

35. Additionally, section 1127(b) is further satisfied because the modification does not affect the classification or treatment of claims and thus does not implicate this Court's previous holding that the Plan satisfies the requirements of sections 1122, 1123 and 1129 of the Bankruptcy Code. Accordingly, the modification should be approved.

**The Proposed Modification Does Not Require Further Disclosure of Resolicitation**

36. As noted, section 1127(c) of the Bankruptcy Code requires that any proposed modification to a plan must comply with, among other things, the disclosure requirements of section 1125 of the Bankruptcy Code. The legislative history of section 1127(c) makes clear that not all modifications to a confirmed plan require new disclosure. *See* H. Rep. No. 595, 95th Cong., 1st Sess., 411 (1977) ("if the modification were sufficiently minor, the court might determine that additional disclosure was not required under the circumstances"). A number of courts have held that further disclosure and resolicitation of votes on the modified plan is required only when the modification *materially and adversely* impacts parties who previously voted for the plan. *See, e.g., Beal Bank, S.S.B. v. Jack's Marine, Inc. (In re Beal Bank, S.S.B.)*, 201 B.R. 376, 380 (E.D. Pa. 1996) (further disclosure and solicitation not required under sections 1127(b) and (c) where modification to plan is immaterial); *In re Century Glove, Inc.,* 1993 U.S. Dist. LEXIS 2286, at *12 (D. Del. Feb. 10, 1993) (upholding bankruptcy court's finding that section 1127 did not require further disclosure and resolicitation of votes on plan modification that altered the treatment to only one creditor when "the modifications at issue did not materially and adversely impact any creditors who previously voted for the Plan"); *In re Am. Solar King Corp.,* 90 B.R. 808, 823-24 (Bankr. W.D.

Tex. 1988) ("Further disclosure occurs only when and to the extent that the debtor intends to solicit votes from previously dissenting creditors or when the modification materially and adversely impacts parties who previously voted for the plan."); *see also In re Temple Zion*, 125 B.R. 910, 914 (Bankr. E.D. Pa. 1991) (further disclosure pursuant to section 1125 is unnecessary where post-confirmation plan modification under section 1127(b) affected distribution to only one creditor, but did not affect any allegedly impaired class); *In re Aleris Int'l, Inc.*, 2010 WL 3492664, at *32 (Bankr. D. Del. May 13, 2010) ("Further disclosure and resolicitation of votes on a modified plan is only required...when the modification materially *and* adversely affects parties who previously voted for the plan.") (citations omitted) (emphasis in original); *In re Federal–Mogul Global Inc.*, 2007 WL 4180545, at *39 (Bankr. D. Del. Nov. 16, 2007) (additional disclosure under section 1125 is not required where plan "modifications do not materially and adversely affect or change the treatment of any Claim against or Equity Interest in any Debtor").

37. The *American Solar King* court explained the logic behind not requiring disclosure and resolicitation of a plan modification where such modification is not material:

> Ballots solicited with the original disclosure statement previously approved by the court will still be valid for the modified plan, because that disclosure statement is presumed already to contain "adequate information" to cover minor modifications. "Adequate information" is a term of art, defined by Section 1125 to be that disclosure necessary for a reasonable investor to make an informed judgment on whether to vote for a given plan. 11 U.S.C. § 1125(a)(1). A modification which is not "material" is by definition one which will not affect an investor's voting decision. Additional disclosure would serve no purpose and would therefore not be required.

*Am. Solar King,* 90 B.R. at 824, n. 28 (internal citations omitted).

38. The proposed modification is not material. "A modification is material if it so affects a creditor or interest holder who accepted the plan that such entity, if it knew of the

modification, would be likely to reconsider its acceptance." *Am. Solar King*, 90 B.R. at 824 (internal citation omitted). In *American Solar King*, the court held that an amendment to a plan to increase the distribution of stock in the reorganized company to one creditor such that other creditors' recoveries would be diluted by less than one percent as a result of the modification to "be so small" so as to be immaterial. *Id.* Similarly, in *Beal Bank, S.S.B. v. Jack's Marine, Inc. (In re Beal Bank, S.S.B.)*, the court held that a modification to a plan after confirmation to extend by 60 days the date on which a creditor would receive payment did not require further disclosure or solicitation "given the immaterial nature of the modification." 201 B.R. at 380. Here, the Debtors submit that the modification is immaterial to any creditor. The modification does not modify any creditors' distribution. The modification merely replaces one funding source and management company with another. The Debtors have designed the modification to enable Reorganized Debtors to continue to operate.

39. Furthermore, the proposed modifications to the Plan is not adverse to any creditors. Courts have held that proposed plan modifications are not adverse where "[n]one of the changes negatively affects the repayment of creditors. . . ." *See, e.g., In re Mount Vernon Plaza Community Urban Redevelopment Corp. I*, 79 B.R. 305, 306 (Bankr. S.D. Ohio 1987); *see also Am. Solar King*, 90 B.R. at 823, n. 27 ("The modified plan need not be resubmitted to creditors and interest holders if the court finds that they are not adversely affected.") (internal citations omitted). In this case, no creditors are adversely affected by the proposed modification. As outlined above, the Plan contemplates that R.J. Capital's financing will inure to the benefit of the Debtors' creditors. The proposed modification will continue to fund the Debtors' plan as approved. The modification will enable the Debtors to tender the Plan Distributions to their creditors without unnecessary delay as

proposed under the original plan. Accordingly, all holders of Allowed Claims will receive the distributions contemplated by the Plan on the Effective Date.

40. Therefore, because the modification is neither material nor adverse to creditors who voted in favor of the Plan, the Debtors submit that they need not provide further disclosure in respect thereof or resolicit the votes of any parties in interest. Moreover, the Management Agreement will provide for SPE to manage the business for the Debtors and Dr. Focazio will manage all medical aspects of the business. SPE will not be paid any management fee.

## NOTICE

41. Notice of this Motion has been provided to (i) the Office of the United States Trustee for the District of New Jersey; (ii) secured creditors; (iii) parties who cast a ballot to the Plan; and (iv) all parties who filed a notice of appearance.

## CONCLUSION

**WHEREFORE,** the Debtors respectfully request the Court entered the proposed order modifying the Debtors' plan and allowing for plan payments to continue as approved for the Debtors and Dr. Focazio, individually.

                                                                **McMANIMON, SCOTLAND & BAUMANN, LLC**
                                                                *Attorneys for Debtors*

Dated: July 13, 2021                        By:   */s/ Anthony Sodono, III*
                                                                                 ANTHONY SODONO, II

4819-9945-1633, v. 1